1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Frutiger, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> USAA General Indemnity Company, <br><br> Defendant. | No. CV-18-00547-PHX-JJT <br><br> **ORDER** |

At issue is Plaintiffs' Motion to Amend Complaint (Doc. 52, Mot.), to which Defendant filed a Response (Doc. 60, Resp.) and Plaintiffs filed a Reply (Doc. 64, Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will grant in part and deny in part Plaintiffs' Motion to Amend Complaint.

**I.  BACKGROUND**

Plaintiff Frutiger rented a minivan for a trip with her sisters, Plaintiffs Jimenez and Decherd. (Compl. ¶ 25.) Frutiger owns a vehicle which she insures through a policy issued by Defendant USAA. (Compl. ¶ 8.) Frutiger alleges that the USAA website led her to believe that she and her sisters would all receive the full coverage of her existing policy while driving a rented vehicle. (Compl. ¶¶ 14–20.) Frutiger further alleges that a USAA customer service representative assured her that the policy would apply to her rental car. (Compl. ¶ 21.)

Plaintiffs were driving on the US 60 freeway when the rented minivan was struck by an oncoming vehicle. (Compl. ¶¶ 26–27.) All three Plaintiffs sustained serious injuries and were evacuated from a hospital in Globe to Chandler Regional Medical Center, where each of them underwent emergency surgery. (Compl. ¶¶ 30–32.)

Upon finding that the driver of the oncoming vehicle had insufficient insurance limits for their medical costs, Plaintiffs submitted insurance claims to Defendant. All three Plaintiffs submitted claims for medical payments under Part B of Frutiger's policy, as well as Part C for underinsured motorist ("UIM") benefits. While Frutiger received the full policy limit of $110,000, Jimenez and Decherd each received only $10,000 under Part B for medical payments. Defendant denied Jimenez and Decherd's claims for UIM coverage because it found that only Frutiger satisfied the definition of a "covered person" under Part C of her policy.[1]

Under Part C, a "covered person" is defined as "(1) You or any family member[;] (2) Any other person occupying your covered auto[; or] (3) Any person for damages that person is entitled to recover because of [bodily injury] to which this coverage applies sustained by a person described in 1 or 2 above." (Compl. Ex. A.) Defined elsewhere in the policy, "family member" includes only "a person related to you by blood, marriage, or adoption who resides primarily in your household." (Compl. Ex. A.) Jimenez and Decherd do not reside with Frutiger. (Compl. ¶ 39.) Further, Defendant determined that Jimenez and Decherd do not qualify as "[a]ny other person occupying" the covered auto because the rented minivan was not Frutiger's "covered auto" under the meaning of the policy. (Compl. ¶ 41.)

Plaintiffs brought claims for breach of contract, breach of the covenant of good faith and fair dealing, first party insurance bad faith, promissory estoppel, and a fifth count labeled Declaratory Judgment Regarding Interpretation of Policy Language. (Compl.)

---

[1] Plaintiffs allege that Jimenez and Decherd similarly did not satisfy the definition of "covered person" under Part B for medical payments, but that Defendant awarded them each $10,000 regardless. (Compl. ¶¶ 47–50.)

Plaintiffs now timely seek to amend their Complaint to include claims for estoppel, negligent misrepresentation, and negligent marketing.[2] (Mot. Ex. 4; Doc. 54 ¶¶ 176–81.)

## II. LEGAL STANDARD

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, *inter alia*, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2)**.** Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. After a defendant files a responsive pleading, leave to amend is not appropriate if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers,* 310 F.3d 628, 636 (9th Cir. 2002) (citation and internal quotation marks omitted). "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003).

"A proposed amended complaint is futile if it would be immediately subject to dismissal. Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (quotations and citations omitted), *aff'd on reh'g en banc on other grounds,* 681

---

[2] While the Court's Scheduling Order (Doc. 36) set the deadline for Motions to Amend for June 29, 2018, the Court later granted several stipulated extensions for time to file an amended complaint. (Doc. 51.) Thus, Plaintiffs' Motion to Amend is timely and Rule 16 is not at issue here.

F.3d 1041 (9th Cir. 2012). To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.     ANALYSIS

Defendant does not argue that Plaintiff's proposed amendments would cause prejudice or undue delay, nor that they are sought in bad faith. Its only argument is that the addition of Plaintiff's new counts would be futile. Defendant argues that all three proposed claims for estoppel, negligent misrepresentation, and negligent marketing "are futile because they fail to state a claim under Arizona law." (Resp. at 1.) Further, Defendant argues that the proposed claims are futile because they are "duplicative of Plaintiffs' existing theory of recovery." (Resp. at 1.)

First, the Court addresses Plaintiffs' argument that the allegedly duplicative nature of a proposed claim does not render that claim "futile" under the meaning of Rule 15(a)(2). (Reply at 3.) Despite Plaintiffs' characterization of this argument as an "afterthought," and their insistence that amendment may be futile only where it fails to state a claim under Rule 12(b)(6), the Ninth Circuit has found that a proposed amendment may fail the test set forth by Rule 15(a)(2) when it is duplicative of an existing claim. *Clark v. Woodford*, 36 Fed. App'x 240, 241 (9th Cir. 2002) ("[Plaintiff's] proposed amendments . . . were either duplicative of existing claims or failed to provide the specific factual allegations necessary to state a claim . . . [t]he district court did not abuse its discretion in denying the amendments as futile"); *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) ("[Plaintiff's] proposed amendments are either duplicative of existing claims or patently frivolous, or both . . . [a]mending the petition to include them would be futile."). Thus, the Court will address all of Defendant's arguments that Plaintiffs' proposed amendments are either duplicative or otherwise futile.

**A.     Estoppel Claim**

Defendant asserts that the addition of Plaintiffs' proposed Count 6 for estoppel is duplicative of Plaintiffs' existing Count 4 promissory estoppel claim. (Resp. at 5.) While Defendant may be correct that Plaintiffs' new estoppel claim is based on the same factual underpinnings as their promissory estoppel claim, Defendant fails to acknowledge that equitable estoppel and promissory estoppel may be simultaneously alleged. In *Waugh v. Lennard*, the Arizona Supreme Court laid out a scenario where both torts may be plausible. 211 P.2d 806 (Ariz. 1949). In that case, a debtor provided his creditor with promissory notes and a promise that if the creditor waited until the debtor's death to pursue collection, the notes would not be barred by the statute of limitations for such claims. *Id.* at 807. After this proved to be untrue and the creditor's claim on the promissory notes was denied by debtor's estate, the court found that the creditor could bring both a claim for promissory estoppel as well as equitable estoppel. *Id.* at 812–13.

While equitable estoppel is the proper remedy when a party relies on a statement that the speaker knows to be untrue in the present, and promissory estoppel "rests on a promise to do something in the future," both may be cognizable in a case like *Waugh*. *Id.* at 812. Because the creditor relied on the debtor's statement both as a present statement of fact that he had effectively terminated the statute of limitations in exchange for her agreement not to pursue repayment until his death, and as a promise to do something in the future—namely, to have his estate repay her at such time—the creditor was entitled to claims under both forms of estoppel.

It appears that Plaintiffs may be similarly situated to allege both equitable and promissory estoppel. But in order to do so, Plaintiffs must make clear in their proposed Amended Complaint that they allege both types of estoppel. As it stands now, Plaintiffs have merely labeled Count 6 as "estoppel," without specifying whether it is equitable estoppel or something else. And under Count 6, Plaintiffs have made no allegations that differ from Count 4. While both claims may be premised on the same underlying facts, Plaintiffs must plausibly allege wrongs cognizable under both torts. To do so requires more

than a conclusory restatement of the facts already listed in Plaintiff's Complaint, without specificity regarding the alleged tort. *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (finding that Plaintiff's Complaint must give Defendant "fair notice of what [Plaintiff's] claim is and the grounds upon which it is based."). Because Plaintiffs may be able to amend their Complaint to remedy this error and make clear the specific legal theory that supports Count 6, the Court will grant them the opportunity to do so. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000).

The Court also notes that, should Plaintiffs choose to amend their Complaint to reflect a claim for equitable estoppel, such amendment would not be duplicative of their recitation of the reasonable expectations doctrine. Defendant argues that "[t]he reasonable expectations doctrine—not the theory of estoppel—is the proper vehicle in Arizona for an insured or potential insured seeking coverage based on the actions or inactions of an insurer in communicating coverage." (Resp. at 5–6.) But, as Plaintiffs point out, the reasonable expectations doctrine "itself is not a claim, but merely a theory to prove a claim." (Mot. at 10.)

As the Arizona Supreme Court has discussed, the reasonable expectations doctrine at times requires that certain boilerplate provisions in insurance contracts and policies not be enforced where the provisions are difficult to comprehend and contradict the reasonable expectations of the insured. *See Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277 (Ariz. 1987); *Darner Motor Sales, Inc. v. Univ. Underwriters Ins. Co.*, 682 P.2d 388 (Ariz. 1984). But in these cases, the plaintiffs sued under tort law and their causes of action were merely influenced by the newly outlined reasonable expectations doctrine. Indeed, in *Darner*, the plaintiffs sued for estoppel and the court "recognize[d] equitable estoppel as a device to prevent enforcement of these boiler-plate terms," explaining that "estoppel may apply where, from the nature of the transaction, the fact finder is able to determine that the insured acted reasonably in not reading the particular provision of the policy." 682 P.2d at 395–96.

Amendment of Plaintiffs' Complaint to include Count 6 for equitable estoppel would not be duplicative of either Count 4's promissory estoppel or the Complaint's

general discussion of the reasonable expectations doctrine. But, as it stands now, Plaintiffs' proposed Amended Complaint fails to state a claim for equitable estoppel. The Court grants leave for Plaintiffs to amend Count 6 of their Amended Complaint to reflect such a claim, should they wish to do so.

### B. Negligence Claims

Next, Defendant argues that Plaintiffs' proposed Count 7 for negligent misrepresentation and Count 8 for negligence/negligent marketing are each duplicative of other claims and fail to state a claim under Arizona law. The Court has already explained that the reasonable expectations doctrine is not a claim but a theory of contractual interpretation relevant to insurance agreements. Thus, the Court will not address Defendant's arguments that both Counts 7 and 8 are duplicative of the reasonable expectations doctrine. (*See* Resp. at 8–9.)

Aside from believing the negligence claims to be duplicative, Defendant argues that both are futile because Arizona law does not recognize negligence claims against an insurer. (Resp. at 7.) But Defendant overstates the rule. Arizona courts have refused to recognize negligence claims where a plaintiff alleges that his or her claim was mishandled. *See Miel v. State Farm Auto. Ins. Co.*, 912 P.2d 1333, 1340 (Ariz. Ct. App. 1995) ("If the company breaches its duty, its insured or the assignee may recover compensatory damages for breach of contract, or damages in tort if the insurer's actions rise to the level of bad faith."). But where, as here, the plaintiff claims that the insurer was negligent in characterizing the scope of his or her policy before any claim was filed, Arizona law recognizes a cause of action under negligence.

In fact, as Plaintiffs point out, the Arizona Supreme Court allowed a negligence claim to proceed in *Darner* where the plaintiff alleged that an agent of its insurance company negligently misrepresented the extent of the policy's coverage. 682 P.2d at 390–91. In reaching this conclusion, the court specifically noted that insurance agents are not exempt from negligence liability in this context. *Id.* at 403 ("Insurance agents cannot be considered as professional without assuming the responsibilities and duties generally

associated with such a status."). In *Miel*, which Defendant cites in support of its argument, the holding of *Darner* was inapplicable because the alleged negligence at issue occurred in mishandling a claim, not in misrepresenting plaintiff's coverage. *Miel*, 912 P.2d at 1340 ("*Darner* dealt with a cause of action for an agent's negligent misrepresentation about the scope of the insurance policy"). But *Miel* does not call *Darner* into question, thus recognizing the validity of a negligence claim in a context nearly identical to the dispute before the Court now. Plaintiffs' proposed negligence claims are therefore not barred under Arizona law.

Defendant's final argument deals only with Plaintiff's proposed Count 8 for negligent marketing. The Court agrees with Defendant that, to its knowledge, no Arizona court has ever explicitly recognized a cause of action for negligent marketing against an insurer. (Resp. at 8.) But Plaintiffs' Amended Complaint treats Count 8 more generally, titling it "Negligence/Negligent Marketing." Thus, if Count 8 alleged negligence more broadly, it could survive. But Count 8 merely restates the allegations necessary for Plaintiffs' negligent misrepresentation claim. As another way of claiming that Defendant and its agents negligently mischaracterized the coverage that Frutiger's policy would provide, Count 8 is duplicative. The Court finds that this defect cannot be cured because Plaintiffs allege nothing that leads the Court to believe a cause of action for negligent marketing—if it exists under Arizona law—would be any different than one for negligent misrepresentation. Thus, the Court will deny Plaintiffs' Motion to Amend as to Count 8.

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiffs' Motion to Amend Complaint (Doc. 52). The Motion is granted as to Plaintiffs' Count 7 for negligent misrepresentation and denied as to Count 6 for estoppel and Count 8 for negligent marketing.

**IT IS FUTHER ORDERED** granting Plaintiffs leave to amend their proposed Count 6 for estoppel to state a claim under Arizona law, as outlined in this Order, should they wish to do so. Plaintiffs' Second Amended Complaint is due by May 31, 2019. If they do file a Second Amended Complaint, Plaintiffs must also file a Notice of Filing Amended

Complaint and attach a copy of the proposed amended complaint as an exhibit, "which must indicate in what respect it differs from the pleading it amends, by bracketing or striking through the text to be deleted and underlining the text to be added."

Dated this 23rd day of May, 2019.

Honorable John J. Tuchi
United States District Judge