**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Frutiger, *et al.*, | No. CV-18-00547-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| USAA General Indemnity Company, | |
| Defendant. | |

At issue is Defendant's Motion for Summary Judgment (Doc. 140, "MSJ 2"), to which Plaintiffs filed a Response (Doc. 147, "Resp.") and Defendant filed a Reply (Doc. 151, "Reply"). Also at issue is Plaintiffs' previously filed Motion Seeking an Order that Plaintiffs Have Shown a Prima Facie Case Regarding Punitive Damages (Doc. 98, "Pl. Mot."), to which Defendant filed a combined Response in Opposition and Cross-Motion for Summary Judgment on Plaintiffs' Punitive Damages Claim (Doc. 109, "MSJ 1"), Plaintiffs filed a combined Reply in Support of its Motion Seeking an Order and Response in Opposition to Defendant's Motion for Summary Judgment Regarding Punitive Damages (Doc. 116), and Defendant filed a Reply in Support of its Motion for Summary Judgment Regarding Punitive Damages (Doc. 127).

The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will grant Defendant's Motion for Summary Judgment.

# I.    BACKGROUND

Plaintiff Frutiger owns a vehicle that she insures through a policy issued by Defendant USAA. (Doc. 131, First Amended Compl. ("FAC") ¶ 8.) She has had that policy for approximately ten years and renews it every six months. In October 2016, Frutiger rented a minivan for a trip with her sisters, Plaintiffs Jimenez and Decherd. (FAC ¶ 25.) Plaintiffs were driving on the US 60 freeway when the rented minivan was struck by an oncoming vehicle. All three Plaintiffs sustained serious injuries.

The driver of the oncoming vehicle was later determined to be at fault. Upon finding the driver had insufficient insurance limits for their medical costs, Plaintiffs submitted insurance claims to Defendant. All three Plaintiffs submitted claims for medical payments under Part B of Frutiger's policy, as well as Part C for underinsured motorist ("UIM") benefits. Under Part C, a "covered person" is defined as:

(1)    You or any family member[;]
(2)    Any other person occupying your covered auto[;]
(3)    Any person for damages that person is entitled to recover because of [bodily injury] to which this coverage applies sustained by a person described in 1 or 2 above.

(Doc. 1, Compl. Ex. A. at)

A "family member," defined elsewhere in the policy, is "a person related to you by blood, marriage, or adoption who resides primarily in your household." (Compl. Ex. A. at 25.) Jimenez and Decherd did not reside with Frutiger and were therefore not covered persons under Section 1. (FAC ¶ 39.) Defendant further determined that Jimenez and Decherd were not covered persons under Section 2 because the rented minivan was not Frutiger's "covered auto" as defined in the policy. (MSJ 2 at 4.)[1]

Defendant paid Frutiger $10,000 for medical payments under Part B and $100,000 for UIM coverage under Part C, comprising her full policy limit. (MSJ 2 Ex. 1 at 104.) Defendant denied Jimenez's and Decherd's claims for UIM coverage on the grounds that

---

[1] The parties agree that Section 3 is irrelevant as applied to Jiminez and Decherd. (FAC ¶ 42.)

they did not qualify as a "covered person" under Part C. However, Jimenez and Decherd did receive $10,000 each for medical payments, despite the fact that the definition of a covered person under Part B is materially the same as it is under Part C. (FAC ¶ 48.) Defendant contends this was an oversight on the part of the claims adjuster; Plaintiffs argue that such an error is evidence of ambiguity in the policy.

Plaintiffs assert that, notwithstanding the contractual language excluding Jimenez and Decherd from coverage, Defendant led Frutiger to believe that her sisters—as passengers in the rented minivan—would be covered. Plaintiffs point to two events that gave rise to this belief. First, prior to renting the minivan in October 2016, Frutiger rented another car in September 2015 to take a road trip with her daughter, who did not reside in Frutiger's home. Before renting that car, Frutiger went to the USAA website to determine the extent of their coverage. Frutiger testified that she saw a banner advertisement on USAA's website that "said something to the fact that renting [a vehicle] is now easier . . . your insurance goes with you." (Pl. Mot. Ex. 2 at 53–54.)

Second, after seeing this ad, Frutiger called USAA and spoke to a customer service representative on August 15, 2015. (MSJ 1 Ex. 1 at 131; Ex. 13.) Frutiger says she mentioned the ad to the representative and explained that her daughter was flying in from Washington and the family planned to rent a car to drive to Las Vegas together. (MSJ 1 Ex. 1 at 139–40.) Frutiger then testified,

> And I said, now, this ad says that I have the same coverage, you know, the coverage moves with me to the rental car. And I said, is this true? And she says, well, let me look up your policy. And so, she looked it up, and she says, yes, that is true, your vehicle will be covered just like it was your own personal vehicle.

(MSJ 1 Ex. 1 at 139.)

Frutiger also testified that, although she had never read her policy before the above events transpired, it was always her understanding that the policy provided "full coverage." (MSJ 1 Ex. 1 at 55, 107.) This belief stemmed from communications with her husband, who had told her about various limits on their policy, including UIM limits, and

- 3 -

characterized it as providing full coverage. (MSJ 1 Ex. 1 at 54–55.) Frutiger testified, however, that she and her husband never specifically discussed coverage for passengers. Rather, Frutiger "assumed" those limits and the concept of full coverage extended to passengers. (MSJ 1 Ex. 1 at 54.) Thus, when she called USAA in August 2015 to inquire about the rental car, she asked whether her coverage would be the same—to which, as Frutiger testified, the representative answered in the affirmative. Frutiger did not ask the representative about UIM coverage specifically or coverage for passengers generally. (MSJ 1 Ex. 1 at 140–41.)

Before renting the minivan for the October 2016 trip with her sisters, Frutiger again wanted to determine coverage for her and her passengers. She visited the USAA website and saw the same banner ad. Knowing she had not made any changes to the policy between the August 2015 phone call and her policy renewal in July 2016, Frutiger "assumed everything was still the same" as when she rented the car in 2015. (Pl. Mot. Ex. 2 at 60.)

After seeing the same ad online, Frutiger group-texted Jiminez, Decherd, and her other sisters who would be on the trip.[2] In recounting the text, Frutiger testified, "I didn't go into specific details, but I do remember telling them that my insurance would go onto [the rental vehicle] and so we didn't have to buy extra [insurance]." (Pl. Mot. Ex. 2 at 57.) Jiminez and Decherd both testified that, in the text, Frutiger said she got a good deal on the rental car and that coverage on her personal vehicle would extend to the rental. (MSJ 1 Ex. 14 at 60; Ex. 15 at 52–53.) However, Plaintiffs all testified that the text said nothing about UIM coverage specifically. Neither Jiminez nor Decherd discussed UIM or passenger coverage with Frutiger, but Decherd testified that Frutiger orally told her about the August 2015 phone call with USAA. (MSJ 1 Ex. 14 at 65; Ex. 15 at 52.)

After Defendant refused to pay UIM benefits for Jiminez and Decherd the three sisters sued. Plaintiffs' First Amended Complaint alleges the following claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) first-party

_____

[2] Plaintiffs testified that they no longer have the pertinent text messages and the Court has no other evidence of the contents of the texts.

insurance bad faith; (4) promissory estoppel, (5) declaratory judgment regarding the interpretation of the policy language; (6) equitable estoppel; and (7) negligent misrepresentation. (FAC at 13–24.)

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the Court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322.)

**III. ANALYSIS**

Defendant moves for summary judgment on all seven counts as applied to all Plaintiffs. The Court notes at the outset that the pleadings lack precision as to whether all three Plaintiffs assert claims for relief under all seven counts, or whether just Frutiger or just Jiminez and Decherd assert certain claims. Nonetheless, the Court will address each claim as if Frutiger, Jiminez, and Decherd each seek recovery under all seven.

**1. Breach of Contract; Declaratory Judgment**

Defendant argues that Frutiger's breach of contract claim must fail because Defendant undisputedly timely paid Frutiger the limits of her policy. (MSJ 2 at 8.) Thus, Defendant breached no duty and Frutiger sustained no damages. With respect to Jiminez and Decherd, Defendant argues that the policy does not provide UIM coverage to them and therefore Defendant had no contractual duty to breach. (MSJ 2 at 11–12.)

Plaintiffs combine the analysis for all three Plaintiffs and, in doing so, raise two arguments in response. First, they contend that Defendant's reliance on the four corners of the document is an overly rigid approach to Plaintiffs' breach of contract claims. Plaintiffs seek to modify or expand the terms of the contract through equitable doctrines such as the reasonable expectations doctrine, promissory estoppel, and equitable estoppel. (Resp. at 7.) Modifying the contractual terms to cover Jiminez and Decherd would permit the sisters to enforce the policy as third-party beneficiaries and would also give rise to a breach of contract claim for Frutiger. Second, Plaintiffs argue that the policy is ambiguous as to whether Jiminez and Decherd are covered. (Resp. at 8–9.) The Court will address Plaintiffs' arguments in reverse order.

**A. Ambiguity**

The Court finds as a matter of law that the terms of the contract are unambiguous. *See Chandler Med. Bldg. Partners v. Chandler Dental Grp*., 855 P.2d 787, 791 (Ariz. Ct. App. 1993) ("Whether a contract is ambiguous is a question of law.") Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning. *In re Estate of Lamparella*, 109 P.3d 959, 963 (Ariz. Ct. App. 2005). Here, the

categories and accompanying definitions of a "covered person" are not susceptible to different meanings. A "family member" within the meaning of policy must reside in Frutiger's household. Jiminez and Decherd undisputedly did not. An "other person occupying the covered auto" requires that the subject vehicle be, as expected, a "covered auto." A covered auto is defined as: (1) a vehicle shown on the declarations page; (2) a newly acquired vehicle; or (3) a trailer owned by the insured. Here, the rented minivan is not on the declarations page; Frutiger did not acquire the minivan, she rented it; and the rental was not a trailer owned by Frutiger. (Compl. Ex. A at 25–26, 33.)

Further, none of the Plaintiffs, including Frutiger, had read Frutiger's policy before the accident. Plaintiffs therefore could not have formulated an interpretation based on the policy's language that could conflict with another interpretation, thereby giving rise to an ambiguity. When Frutiger did go over the policy during her deposition, she admitted that "as the policy is written, [her] sisters would not be entitled to underinsured motorist coverage." (MSJ 1 Ex. 1 at 127.) Thus, it appears Frutiger herself does not believe the contract is ambiguous.

Finally, the fact that Lawrence Enriquez, a trained claims adjuster, made medical payments under Part B to Jiminez and Decherd as if they were covered persons does not suggest an ambiguity because Enriquez did not rely on the policy language in making the determination to pay out said claims. (Reply Ex. 1 at 10.) He paid them out automatically, without reference to the underlying policy. Accordingly, the Court finds that the terms of the policy unambiguously do not provide coverage to Decherd and Jiminez as passengers in the rental vehicle.

## B.    Reasonable Expectations

Alternatively, Plaintiffs ask the Court to apply the reasonable expectations doctrine to modify or expand the coverage under the policy. This doctrine allows a court, under limited circumstances, to refrain from enforcing unambiguous boilerplate terms of a standardized insurance agreement. *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987). The doctrine does not apply just because the insured experiences the "fervent

hope usually engendered by loss." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 395 (Ariz. 1984). Rather, it applies when (1) the insured had a reasonable expectation of coverage, and (2) the drafter "had reason to believe that the adhering party would not have assented to the particular term had he or she known of its presence." *Id.* at 396. The drafter's "reason to believe" may arise from prior negotiations or other inferences drawn from the circumstances. *State Farm Fire & Cas. Co. v. Grabowski*, 150 P.3d 275, 281 (Ariz. Ct. App. 2007).

As a threshold issue, the Court finds that the terms of coverage may be modified to include Jiminez and Decherd only if it concludes *Frutiger* had reasonable expectations of such coverage. Jiminez and Decherd were not parties to the contract or insureds under the policy and had never read the policy, spoke to a USAA representative, visited the USAA website, or contributed to premiums under Frutiger's policy. *See Alcala v. Mid-Century Ins. Co.*, 828 P.2d 1262, 1264 (Ariz. Ct. App. 1992) ("Appellant had nothing to do with the purchase of the policy in question. She never had an insurable interest or expectancy under the policy. No coverage has been taken from her that she was entitled to receive. The doctrine of reasonable expectations does not apply to her."); *see also Ogden v. U.S. Fid. & Guar. Co.*, 933 P.2d 1200, 1203 (Ariz. Ct. App. 1996). Their expectations are immaterial to the analysis.

Plaintiffs contend *Alcala* is distinguishable because, here, Jiminez and Decherd's expectations arose out of information relayed to them by Frutiger, whose own expectation came from the phone call. Even if the Court considered this chain of hearsay and imputed Frutiger's expectation onto her sisters, Plaintiffs have not raised a genuine issue that their resulting expectation of coverage was *reasonable*. All three Plaintiffs testified that Frutiger, "without going into specific detail," told them her insurance policy would cover the rental van as if it was her personal vehicle. But Jiminez and Decherd never knew the terms of Frutiger's policy to begin with, so they could not reasonably form an expectation of coverage—UIM, passenger, or otherwise.

Thus, to reform the policy, Frutiger must show that (1) *Frutiger* had a reasonable basis for believing her sisters were covered, and (2) Defendant had reason to believe Frutiger would not have accepted the agreement had she known it did not provide UIM coverage to her sisters in a rental car. The Court finds that Frutiger fails to create a genuine dispute as to both.

Frutiger contends that her reasonable expectations have origins independent of the policy: the online ad and the call with USAA's representative. *See Darner*, 682 P.2d at 399 (holding an insured who had never read his policy could still have reasonable expectations of coverage). However, Frutiger testified that the ad said "something to the fact that . . . your insurance goes with you." This was true. *Her* insurance coverage did go with her, evidenced by her timely receipt of payment on her claims. Frutiger also said she asked the representative whether "the coverage moves with me to the rental car." The representative responded, "[Y]es . . . your vehicle will be covered just like it was your own personal vehicle." This was also true. The rental *vehicle* was provided the same comprehensive and collision coverages as her own vehicle. (*See* Compl. Ex. A at 15.) Without asking about passengers or being told that her passengers would be covered, Frutiger could not have formed a reasonable expectation that her sisters would be covered.[3]

Frutiger testified that she told the representative her daughter was flying in from Washington and that they were renting a car to drive to Las Vegas. Frutiger maintains this gave Defendant "reason to believe" within the meaning of the doctrine. However, Frutiger did not ask about coverage for her daughter or for passengers generally. In the absence of other evidence, the Court finds this is insufficient to raise a genuine dispute that Defendant had reason to believe Frutiger would have rejected the term excluding her sisters from UIM coverage.

---

[3] Even if the Court construed Frutiger's question of whether "the coverage moves with me" as specifically encompassing UIM coverage for passengers, Frutiger's understanding of "coverage" came from her husband—not the policy itself. Based on conversations with her husband, she assumed that she and her passengers had "full coverage." Her belief then that passengers were included in the representative's response stemmed from extrinsic sources to begin with.

Accordingly, the reasonable expectations doctrine does not apply under these circumstances. The Court therefore declines to modify the policy to cover Jiminez and Decherd or permit its enforcement under an intended third-party beneficiary theory. As Defendant had no contractual duty to Jiminez and Decherd, it is entitled to summary judgment on their breach of contract claims.

As for Frutiger, Defendant paid her all benefits owed to her under the policy. Frutiger admitted Defendant investigated her claim timely, paid it promptly, and does not "contend that USAA breached any duty to [her] under the policy." (MSJ 1 Ex. 1 at 104.) Further, having established above that Defendant owed no contractual duty to Jiminez and Decherd, any of Frutiger's alleged damages deriving from the denial of their claims fail. A breach of contract claim cannot be sustained without a breach or damages. *See Thomas v. Motelucia Villas*, 302 P.3d 617, 622 (Ariz. 2013). Defendant is therefore entitled to summary judgment on Frutiger's breach of contract claim.[4]

Because the Court finds the contract unambiguous and the reasonable expectations doctrine inapplicable, the Court also grants Defendant summary judgment as to Claim 5 (declaratory judgment regarding the interpretation of the policy language).

### 2. Contractual Breach of Covenant of Good Faith and Fair Dealing; Bad Faith

Arizona law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986). The covenant prohibits a party from acting in a manner that impairs the right of the other to receive the benefits which flow from their contractual agreement. *Id.* It arises, therefore, by virtue of a contractual relationship. *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 28 (Ariz. 2002). Because the Court determined above that Jiminez and Decherd do not have a contractual

---

[4] Plaintiffs raise equitable estoppel and promissory estoppel as other theories under which the contract could be reformed, giving way to a breach of contract claim. They also allege equitable and promissory estoppel as independent claims. The Court addresses them as their own claims later in this Order.

relationship with Defendant, their claims for contractual breach of the duty of good faith and fair dealing fail as a matter of law.

"[T]he remedy for breach of the implied covenant is an action for breach claiming *contract* damages." *Id.* (emphasis in original). Frutiger's claim also fails as a matter of law because she has no contract damages. Defendant did not impair Frutiger's rights to receive the benefits under the contract precisely because she did receive all the contractual benefits owed to her when Defendant timely paid her claims. Further, payment of UIM benefits to the insured's non-resident relatives for an accident in a rental car was not contemplated by or covered under the contract. Defendant therefore breached no duty of good faith to *Frutiger* when it refused to pay her sisters' claims.[5]

First-party insurance bad faith is the claim for breach of the covenant of good faith that sounds in tort. An insurance company acts in bad faith when it intentionally and unreasonably denies or delays payment to its insured. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000). Like its contractual claim counterpart, a tortious bad faith claim is borne out of the contractual relationship. *See Rawlings*, 726 P.2d at 574. Jiminez and Decherd were not insureds under the policy; they had no contractual relationship with Defendant and were in fact strangers to the contract. Because they have no legal right to payment, it was not unreasonable for Defendant to deny their claims. Accordingly, Defendant is entitled to summary judgment on Jiminez's and Decherd's bad faith claims.

Frutiger's bad faith claim cannot survive for the same reasons that her breach of contract and breach of the implied covenant claims cannot. Namely, Defendant paid Frutiger all benefits owed to her under the policy, and she does not dispute that Defendant investigated and paid her claim timely. Frutiger has not raised a genuine dispute that

---

[5] Plaintiffs argue their claims for contractual breach of the covenant of good faith must survive because Defendant failed to move for summary judgment on them. While Defendant briefed its bad faith argument, it did not explicitly do so on the contractual covenant claim. However, as Defendant noted, the first sentence in the Motion declared that Defendant "hereby files its Motion for Summary Judgment seeking an order entering judgment in favor of [Defendant] on all Plaintiffs' claims." (MSJ 2 at 1.) Even so, Plaintiffs' claims for contractual breach of good faith fail on their merits as a matter of law.

1  Defendant acted unreasonably in the processing of her claim. Summary judgment for
2  Defendant is therefore warranted on Frutiger's bad faith claim.

3  **3.  Negligent Misrepresentation**

4  Arizona follows the Restatement (Second) of Torts in defining a claim for negligent
5  misrepresentation. Section 552(1) of the Restatement provides:

> One who, in the course of his business, profession or employment, or in any
> other transaction in which he has a pecuniary interest, supplies false
> information for the guidance of others in their business transactions, is
> subject to liability for pecuniary loss caused to them by their justifiable
> reliance upon the information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the information.

10  Thus, Plaintiffs must establish (1) Defendant provided false information in a
11  business transaction; (2) Defendant intended or knew Plaintiffs would reasonably rely on
12  the information; (3) Defendant failed to exercise reasonable care in obtaining or
13  communicating the information; (4) Plaintiffs justifiably relied on the incorrect
14  information; and (5) resulting damages. *KB Home Tucson, Inc. v. Charter Oak Fire Ins.*
15  *Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014).

16  **i.  Frutiger**

17  Defendant argues that Frutiger's claim for negligent misrepresentation must fail
18  because Frutiger suffered no detriment. (MSJ 2 at 9.)  Her claims were promptly paid.
19  (MSJ 2 at 9.) Plaintiffs respond that "USAA's misconduct subjected Frutiger to a risk that
20  she, as the agent and person on whom her passengers relied, face a cause of action in
21  negligence and estoppel by her passengers." (Resp. at 13.) An unrealized and speculative
22  risk of litigation does not constitute pecuniary loss or actionable damages.[6] Accordingly,
23  Defendant is entitled to summary judgment on Frutiger's negligent misrepresentation
24  claim.

---

26  [6] Although not specifically briefed by the parties, based on the evidence before it,
27  the Court would also be hesitant to conclude that the information supplied by the USAA
representative was false. As noted about, Frutiger testified that the ad said "your insurance
28  goes with you." Her insurance coverage did, as she received payment on her claims. The
phrase "your vehicle will be covered just like it was your own personal vehicle" was also
true because the rental vehicle itself had the same coverages as Frutiger's own vehicle.

## ii. Jiminez and Decherd

A commercial supplier of information may be liable for negligent misrepresentation when it knows or intends the representation to reach and influence a limited group or class of persons. "[D]irect communication of the information to the person acting in reliance upon it is not necessary." Rest. 552 cmt. g (illustrating that a weigher of beans could be liable to a buyer of beans for negligent misrepresentation, when the weigher miscalculated the weight to the vendor and the vendor communicated such information to the buyer, who then purchased the beans in reliance on the misinformation). Thus, the fact that Jiminez and Decherd did not speak directly to the USAA agent is not fatal to their negligent misrepresentation claims.

Rather, Defendant contends that the sisters' claims fails because they produced no evidence (1) that the representative's information fell below the professional standard of care for an insurance agent or producer, or (2) that Jiminez and Decherd relied on that information. As the Court finds that Jiminez and Decherd have failed to produce evidence of actual reliance, it need not address Defendant's first argument.

To overcome summary judgment on a negligent misrepresentation claim, "there must be some evidence in the record of reliance." *Sw. Non-Profit Hous. Corp. v. Nowak*, 322 P.3d 204, 212 (Ariz. Ct. App. 2014). In that case, the court upheld summary judgment for the defendants, finding no indication in the record that the plaintiff relied on defendants' appraisals in acting or refraining from a course of action. *Id.* Conversely, in *In re Allstate Life Ins. Co. Litig.*, 971 F. Supp. 2d 930, 948 (D. Ariz. 2013), the defendants there had misrepresented the sources for debt repayment on the bonds they had underwritten and sold. A bond rating agency relied on these misrepresentations in calculating the bond rating and plaintiffs subsequently relied on the rating in purchasing the bonds. Plaintiffs' declarations that they would not have purchased defendants' bonds had they known they were junk bonds were sufficient to establish a genuine dispute as to reliance.

Here, Jiminez and Decherd have put forth no evidence that they acted in reliance on the information or that they would have done things differently had they known the policy did not cover them as passengers in the rental. In her deposition, Decherd responded "I don't know" to the following questions: "Do you know whether you would have done anything differently?" "Would you have purchased additional coverage through the rental car company?"[7] "Would you have purchased higher limits on your own insurance policy?" (MSJ 1 Ex. 15 at 94.) When Jiminez was asked what she would do if Frutiger "had come back to you and said . . . the rental car is covered, but . . . passengers wouldn't be covered for UM/UIM in the rental van," Jiminez responded, "I don't even know what I would have done." (MSJ 1 Ex. 14 at 99.) She said, "I just don't know" when further pressed with the question, "Would you have done anything differently?" (MSJ 1 Ex. 14 at 99.)

Plaintiffs did not produce any evidence controverting or elaborating on this deposition testimony. Rather, Plaintiffs point to testimony of Frutiger's husband, Chris, who testified that prior to the 2015 phone call, the Frutigers used to purchase additional insurance on rental cars, but that they stopped this practice after the phone call. (*See* Pl. Mot. Ex. 3 at 28.) While this may be evidence that *Frutiger* relied on the information, it does not establish reliance on the part of *Jiminez* or *Decherd*.

The Court finds that, without more, Plaintiffs' repeated answers of "I don't know" are insufficient to create a genuine issue of material fact as to their actual reliance on the USAA representative's response to Frutiger's inquiry in 2015. *See Anderson*, 477 U.S. at 256–57. Accordingly, Defendant is entitled to summary judgment on the sisters' negligent misrepresentation claims.

### 4. Equitable Estoppel; Promissory Estoppel

Equitable estoppel "precludes a party from asserting a right inconsistent with a position previously taken to the prejudice of another acting in reliance thereon." *Unruh v. Indus. Comm'n*, 301 P.2d 1029, 1031 (Ariz. 1956). It requires a showing that (1) one party

---

[7] As Defendant notes, Plaintiffs fail to show that the rental company even offered additional UIM coverage for passengers, let alone that Decherd and Jiminez would have purchased it had they know they were not covered under Frutiger's policy.

acted inconsistently with a position it later adopted; (2) the other party relied on the prior position; and (3) injury to the latter resulted from the former's repudiation of its prior conduct. *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 959 P.2d 1256, 1267 (Ariz. 1998).

Somewhat similarly, in asserting promissory estoppel, a party must show (1) the other party made a promise; (2) it was reasonable reasonably foreseeable that the first party would rely on that promise; and (3) the first party actually relied on the promise to his substantial detriment. *See Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. Ct. App. 2002); *Emp'rs Reinsurance Corp. v. GMAC Ins.*, 308 F. Supp. 2d 1010, 1018 (D. Ariz. 2004). The major distinction between the two estoppel theories is that equitable estoppel refers to reliance on a misrepresentation of some present or past fact, whereas promissory estoppel rests upon a promise to do something in the future. *Trollope v. Koerner*, 470 P.2d 91, 99 (Ariz. 1970).

However, critical to this Court's analysis is not the theories' distinction, but their similarities. Both equitable and promissory estoppel require justifiable and detrimental reliance on the representations made by the other party. Thus, for the reasons Plaintiffs' negligent misrepresentation claims fail, so too do their claims of equitable and promissory estoppel. Frutiger has not established that she suffered an actionable detriment resulting from the information conveyed in the August 2015 phone call.[8] *See GMAC Ins.*, 308 F. Supp. 2d at 1018 ("Under Arizona law the prejudice necessary for estoppel must be substantial; the injury must be real and not technical or formal in nature."). Jiminez and

---

[8] Frutiger argues that the relief she seeks under promissory estoppel is not monetary damages for emotional damages, but rather equitable relief in the form of "establishing coverage greater than the policy language." (Resp. at 13.) Regardless of the form of relief, Frutiger has not established a requisite element of promissory estoppel: legal detriment. It is further questionable whether the statement "your vehicle is covered just like your personal vehicle"—or some variation of that—is a promise at all. *See, e.g., GMAC Ins.*, 308 F. Supp. 2d at 1018 (noting the difficulty in determining whether the statement, "Our policy would be to protect any and all liens . . . we will protect your lien," is a promise or merely an expression of intent or declaration of policy). In the very least, it does not appear to be a specific promise to pay UIM coverage for passengers.

Decherd have not established actual reliance on the same. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' estoppel claims.[9]

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 140).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion Regarding Punitive Damages (Doc. 98) and Defendant's Motion for Summary Judgment on Punitive Damages (Doc. 109) as moot.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment in favor of Defendant and to close this case.

Dated this 25th day of November, 2019.

Honorable John J. Tuchi
United States District Judge

---

[9] Defendant also argues that equitable estoppel is available only as a defense by the relying party and that it is not a basis for its own cause of action for damages against the misrepresenting party. (MSJ 2 at 10 (citing *Tiffany, Inc. v. W.M.K. Transit Mix, Inc.*, 493 P.2d 1220, 1224 (Ariz. Ct. App. 1972); *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 918 (9th Cir. 2001)).) This alone, Defendant contends, is fatal to Plaintiffs' claims. Plaintiffs counter that *Darner* permitted an insured to expand coverage under a theory of equitable estoppel and asserts that they seek "not monetary damages, but relief . . . under estoppel theories." To the extent that Plaintiffs' equitable estoppel claim could be construed as a defense to Defendant's assertion of no coverage, rather than its own claim for damages, Plaintiffs have still not established all elements required for a finding of equitable estoppel.